We've got four cases on the calendar today. We'll call the first case, 20-9651, Aguayo v. Garland. Good morning, Your Honors. Joseph Robertson, student attorney, appearing on behalf of Mr. Angel Aguayo. This case is about Article III oversight of government agencies when they violate their own regulations, regulations mandated by statutes, the Constitution, and a federal court injunction. These regulations were designed to protect non-citizens like Mr. Aguayo, who came to the U.S. as a child, has been applying for immigration status for over 20 years, has three U.S. citizen children, and a wife, parents, and siblings, all with status. One month before his green card interview, ICE sent Utah officials an immigration detainment request that caused Utah officials to arrest Mr. Aguayo without civil immigration arrest authority. But the regulation permitted that, didn't it? On its face, but the regulation can't be interpreted that way without being ultra viris, given the underlying enabling statute, 1357D, which clearly states that immigration detainers are merely requests for information, and the attorney general must assume custody after they've been issued, not a state official. There are limited circumstances in which state officials can act as federal immigration officers, but those circumstances were not met here. And is that where the 287 agreement comes in? Yes, Your Honor, that's the primary avenue through which state officials can act. So that's an agreement between the locality and the attorney general. That gives them the proper training, too, to act as immigration officers under 1357G. So you're saying the regulation that was promulgated by the agency is invalid? Not necessarily, Your Honor. That's what you just said. Either it's invalid, or it must be interpreted in accordance with the enabling statute not to authorize this sort of arrest. Isn't the regulation clear on its face? It is pretty clear. So then it has to be that you're saying that the regulation is invalid because it's in conflict with the enabling statute. Or, using avoidance doctrines, this court could kind of give a less than clear interpretation to the regulation and not strike it down. So you're saying that we can interpret the regulation in a way that is different than what it says facially? I think the court needs to be guided, first and foremost, by the enabling statute. And if the regulation clearly conflicts with the enabling statute, either the court can strike it down as ultra vires or the court can interpret the regulation accordingly. Accordingly, what do you mean? Do you interpret it in a way different than it appears on its face? Yes, Your Honor. All right. How is that different than saying the regulation is invalid? Interpreting it invalid is a very reasonable option for the court. And there's other violations, too, Your Honor. The very next day, ICE itself enacted a warrantless arrest on Mr. Aguayo in violation of 287.8. The very next day to what? So on July 29th, the Utah officials enacted an unlawful arrest on Mr. Aguayo. But the very next day, ICE itself enacted a lawful arrest on Mr. Aguayo. He was in jail to begin with. And they only held him for a couple of extra hours. They let him out at, what, 3 o'clock in the afternoon, and then ICE picked him up the next morning? That's right. It was about 12 hours, Your Honor. And it's not contested that that additional period of confinement was because of the immigration detainer request. So it was past the state-authorized time to hold on to Mr. Aguayo, and it needed a new source of arrest authority. And here, there was no other source of arrest authority. Mr. Robertson, can I ask you, let's say that we spot you, the violation here, as being ultra-various, and we accept your argument. Can you speak to prejudice in this case? What is the prejudice to Mr. Aguayo? I understand the BIA did not think that there was actual or presumed prejudice here. What is your position on that? Yes, Your Honor. So under the BIA's own test in Garcia-Flores, there's three different ways to get to prejudice. One, prejudice should be presumed when the Constitution or a statute were violated, along with the regulation. Two, prejudice should be presumed when a procedural framework designed to protect noncitizens was violated. And three, actual prejudice is a way of fulfilling that prong. So principally here, we're finding that prejudice is presumed because there was a statutory and constitutional violation of both the supremacy clause and the separation of powers, along with the regulatory violation in the arrest on the 29th. Doesn't the presumed prejudice standard require an egregious violation? Not under the Garcia-Flores test from the BIA. That opinion doesn't use the word egregiousness ever. However, Your Honor. But didn't you use the word egregious in your motion to terminate? Yes, Your Honor. Because the Second and Ninth Circuits have recognized an independent way to meet that third prong. You could call it the prejudice prong. The Second and Ninth Circuits have said an egregious violation independently satisfies it. And the standard they use for an egregious violation is conscience-shocking conduct. And here, we get to that through the aggregate of violations and the violation of a federal court injunction from the U.S. District Court of Utah. The injunction was five years before this arrest and clearly said, arrests pursuant to detainers by state officials are unlawful under Arizona v. U.S. However, this arrest occurred anyway. Given the aggregate of violations and the violation of the injunction, that rises to the level of egregiousness and independently meets that third prong. But that wasn't action by the agency. By ICE, that was action by the state. So ICE, as a matter of practice, sent the detainer request knowing that it would cause the Utah officials to enact an unlawful arrest for the benefit of ICE. Therefore, ICE should be held accountable. So you're saying that the state would not have arrested this gentleman but for the ICE detainer? Yes, Your Honor. And what in the record establishes that? That point is in dispute, Your Honor. The BIA ruled that because the detainer request conferred authority to the state officials to prolong the detention, which constitutes a new arrest. That's not my question. I'm talking about the original arrest by the state. How was that caused directly by the detainer issued by ICE? Well, the original arrest was due to some misdemeanor state law violations by Mr. Aguayo, but the prolongation of the arrest under precedent from the First Circuit Morales and from other courts, that constitutes a new arrest and must have a new source of authority. And we're talking about 12 hours, right? Yes, Your Honor. And so isn't it incumbent upon you to show that that detainer for 12 hours caused prejudice? So the prejudice had to occur in those 12 hours, correct? I don't think Garcia Flores stands for that proposition, Your Honor. I think it says that prejudice can be found through the three independent routes. Prejudice is presumed with the confidant. I want to talk about actual prejudice. If we determine that the case you rely upon is not necessarily our law and we think you must show actual prejudice, don't you have to show that actual prejudice occurred in that 12-hour period? There was actual prejudice, Your Honor. Yes or no? Do you have to establish that the prejudice was during that one window of 12 hours? No, Your Honor. And why not? Because it goes to regulatory agency accountability. This is an important stage in the law enforcement process that at this point— But he was only detained for 12 hours by the ICE detainer beyond when he was released upon sentencing. That's true, Your Honor, but the reasons he was detained were egregious and prejudicial, and they flew in the face of a federal court injunction. Okay, you're not going to get me yet to presume prejudice. What I want to know is what was the actual prejudice in that 12-hour period? Having his liberty taken away when it shouldn't have been, Your Honor. For 12 hours? Yes, Your Honor, and we have an independent violation the next day because there's a very clear flight risk assessment requirement. The regulation 287.8C22 says there must be a likelihood of escape, and there's an enabling statute, 1357A2, that also says there must be independently probable cause of a likelihood to escape. And ICE did not make a likelihood to escape assessment before they conducted the Wartland-Saracen visit. What if the ICE detainer was only for an hour while they were processing his papers after the sentencing through the time of his being turned over to ICE? What if that was one hour? That's not the case before the court, Your Honor. I'm asking you a hypothetical. We have to write a decision that covers a lot of different circumstances, so you can answer that question. I think that circumstance may be distinguishable if it was merely processing time, but the BIA decision, and I don't think it's in dispute, that this was not just processing time. This was a new arrest, which needed new authority. So, Mr. Rupperson, what is the actual effect on the deportation proceeding here? Isn't that the language in Garcia Flores? What are you contending was the effect on the deportation proceeding from this violation? So instead of adjudicating his adjustment before U.S. Immigration Services, a neutral arbiter, he was in custodial settings and having to adjust in an adversarial setting with DHS attorneys arguing against him. But we can also get to the prejudice problem through the other means, the egregiousness means through the presumption of prejudice, through the statutory and constitutional violations. So your position is that this is an egregious violation, right? Yes, Your Honor. And is that just because of the length of time? No, Your Honor. It's because of the aggregate of regulatory violations. We have violations on the 29th and on the 30th, and we also have the violation of a clear federal court injunction. What if we say you can't? We're not going to attribute the violation on the 29th to ICE. So take that out. What are the factors of egregiousness? Well, the violations on the 30th still stand on their own, and they were egregious because they go to the core of Fourth Amendment protections. Each egregious act from the time that he was released upon sentencing until ICE took him. He was arrested without a flight risk assessment, which is clearly required by the regulation, the statute, and mandated by the Fourth Amendment under different standards for civil seizures, for what's reasonable during a civil seizure. A finding that he was likely to escape was necessary, and that wasn't made. And the reason that's so egregious here is because he was already presenting himself to the government. He had a hearing in less than a month, and he was going to the government. He wasn't a flight risk at all, and there's no evidence on the record that any flight risk assessment was ever conducted. It's not disputed that there wasn't a flight risk assessment, and that rises to the level of egregiousness, Your Honor. I'd like to reserve the rest of my time for rebuttal, please. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Kosei Ugamori, and I represent the United States in this case. This petition for review should be denied. In support of that position, the government highlights three points. First, the petitioner's transfer in compliance with Section 287.7d did not violate the Constitution and was not contrary to law. Second, the petitioner alleges various pre-hearing violations. However, he must show prejudice, and he has not done so in this case. In fact, he does not contest alienage, removability, or that he is ineligible for any immigration benefits or status. And third, the relief of termination without prejudice is not appropriate in this case, and moreover, this Court should not grant such drastic relief in the first instance. Petitioners do not dispute that his transfer was in compliance with Section 287.7d. Counsel, can we turn to the prejudice component? I'm interested in that the most here. Isn't it true that the BIA used the wrong standard in evaluating prejudice under Garcia Flores? The BIA held, it seems, Mr. Aguayo to a standard that would require him to show something more than a potential effect. Isn't that right? That is not correct, Your Honor. The board applied the correct law. Well, the BIA decision says that he has not established that any of these offenses affected the outcome. Isn't affected the outcome different than probably or potentially affected the outcome? Wasn't he held to a higher standard in the BIA? I don't think that's the case, Your Honor. In fact, in matter of Garcia Flores, decided by the board in 1980 and upon which petitioners rely, also used that language to describe what prejudice meant. It has to affect the outcome of the case. So it's not just merely – It's potentially effect. I just want to make sure I understand. Is there not a distinction that makes the difference between potentially effect and effect? Yes, Your Honor. So the board does apply the prejudice standards of the governing circuit. And in this circuit, it would be reasonable likelihood that it would affect the outcome of the proceedings. It's different in every circuit, but the board is presumed to apply the law that's applicable here. And so, yes, the board's reference to effect of the outcome would presumptively apply the law of the circuit, which is under a guillotino, a reasonable likelihood that proceedings were affected. And regardless of the standard that the board applied here, there really is no way any of the allegations of error affected the petitioner's case. First and foremost, he does not challenge alienage, removability, or any of his criminal convictions. And he does not allege that he is eligible for relief. He does not even contest the board's denial of his application for adjustment of status. Furthermore, even if these alleged violations did not occur, he had been identified by ICE back in February 2019 before all of this happened. He would have been in proceedings in all cases. And so, regardless of whether the violations had occurred, he would still be before the immigration judge, which means that USCIS would not have jurisdiction to have reviewed his adjustment application. And so, you know, the allegations that he makes, that he was arrested without an arrest warrant, he was arrested in violation of 287.8C22, or that a notice to appear did not or did precede his arrest, all these pre-hearing violations do not affect his ability to present evidence in immigration proceedings. It does not affect his ability to advocate on his behalf. And it certainly does not affect his statutory eligibility for any relief that he would seek. So, for those reasons, there's really no prejudice here. And the board was not erroneous in pointing that out, Your Honor. And furthermore, as Your Honors have noted, there is no egregious violation in this case. In fact, it is in compliance. You would agree, wouldn't you, that the proceedings are different in kind had he proceeded as his wife did, versus as he had to proceed when he was incarcerated pursuant to the detainer? Certainly. They would be different, but the evidence he would present, the law that would be applied would be the same. First of all, the other proceeding is called an interview, isn't it? Yes, it's a non-adversarial interview. Right. But the hearing that he actually got was a hearing. Yes. We have interview versus hearing. And doesn't that really make a big difference? No, Your Honor. He received more process in immigration proceedings. Why is more process better under these circumstances? Well, he had an opportunity over the course of several days to present witnesses, I believe five or six witnesses, to testify on his behalf. And it should be noted here that his case is quite different from his wife's case, which was approved by USCIS. His wife, I mean, there's nothing in the record to suggest that she has a history of criminal convictions, as does the petitioner in this case. In fact, the petitioner was detained here under mandatory detention because his convictions for forgery constituted crime involving moral turpitude. So we have an entirely different type of case here. And the fact that he was provided a hearing with the assistance of able counsel and opportunity to submit arguments, briefing, witnesses over the course of many months, he certainly had his day in court, Your Honor. And there's no violation of the Constitution or fundamental fairness in the petitioner's case. And was he examined by opposing counsel during that hearing? Yes, by DHS. If he had proceeded in front of USCIS, would he have been cross-examined by government counsel? No, but there would be questions asked about his convictions, no doubt, Your Honor. And perhaps USCIS might have denied it. But that's not before this court, nor can we speculate as to what USCIS could have done. What we do know is that petitioner is not alleging that he would have submitted different evidence had he appeared before USCIS. He's not arguing that there's different legal qualifications for the relief he sought had he been before USCIS. He's just asking that, you know, same exact evidence, but perhaps a different adjudicator might have granted him relief. But that's the kind of speculation. So the grovelment of your case on actual prejudice is that the 12 hours or the entire time of his detainer, from when that started with ICE until his hearing, is that there was no prejudice because he had a free and fair hearing? That's the grovelment of your view, right? Yes, so right. So he would not have been granted relief in any event. And furthermore, it's the fact that he would have been before an immigration judge in all cases. So he was identified back in February as a person of interest by ICE to be placed in removal proceedings. His interview wasn't until August, and that was subsequent to the transfer that happened in July. So once you're placed in removal proceedings, you're necessarily going to appear before an IJ? Right. USCIS no longer has any jurisdiction over the adjustment application. So the point is, even if the 12-hour detention had not occurred, he would still be in removal proceedings, and he would never have applied, and USCIS never would have had an opportunity to adjudicate his adjustment application. What is our standard of review for the BIA's prejudice conclusion? I believe it is de novo, Your Honor. I don't have a firm answer at this moment, but I believe that is the standard, and that is the standard that the court appears to have applied in the past. Furthermore, the relief of termination without prejudice, not appropriate in this case, Your Honor. So it's not, but you agree that it is available, that it is just, your position is that as the BIA found it was unwarranted, but it is available as a remedy, right? Yes, it is available in certain times, yes. But it's particularly not appropriate here, because the board in this case did not resolve whether there were even violations in this case. It skipped the prejudice and resolved the case finding no prejudice. So if this court were to find prejudice and error, the appropriate remedy would be to remand the case so that the board can address whether there were even violations here. And furthermore, you know, it would be inappropriate. Let me ask you this. If we reversed because there was at least some evidence, we felt, of prejudice, and it went back to the BIA and I guess back to a hearing officer, could they resume the prejudice analysis, or is that gone? I think that would depend on how this court rules. If there is no room for the agency to decide whether there was prejudice, then by law of the case the board would be bound by this court's decision. But there are other rules. The board is permitted to make a dispositive finding without addressing every dispositive issue in the case. And so if the court were to remand for a determination on prejudice, certainly the board would respond to that through the court's order. But at the same time, there are other grounds upon which the petitioner's case could be disposed. And it's just the request for relief that this court order or grant termination relief is not appropriate. Even if there was a violation and even if there was prejudice, as the Supreme Court has recognized, it's the executive agency that's primarily responsible for fashioning remedies for regulatory violations. And, indeed, the petitioners rely on Sanchez v. Sessions, which is a Ninth Circuit case, which comes very close to what they want, which is termination without prejudice. But even in that case, where the court held that there was a prima facie evidence of an egregious violation of a regulation, even in that case, the court remanded for the government to give them an opportunity to rebut the finding of an egregious violation and concluded that even if there was an egregious violation, the board shall consider whether termination without prejudice is appropriate. So the Ninth Circuit, consistent with Supreme Court precedent, did not order or grant termination without prejudice in the first instance. Is it your position that the termination remedy requires an egregious violation? Not in all cases, Your Honor. No. Under Garcia-Flores, the board set forth the legal framework when termination without prejudice may be appropriate. So, first, regulation has to serve a purpose or benefit to the noncitizen. Second, there must be prejudice affecting the outcome of the case. And furthermore, the board said that in the ordinary case, prejudice must be shown by the person seeking the relief. But there are two circumstances in which prejudice may be presumed. First, if it's mandated by the Constitution. And second, when the regulation forms a part of a procedural framework designed to ensure fundamental fairness. So those are the two circumstances in which prejudice may be presumed. And none of the regulations or the statute that the petitioner alleges have been violated here pre-hearing, governing pre-hearing conduct would affect were mandated by the Constitution or would affect the fundamental fairness of the proceedings. So, in brief, the petitioner's transfer here was consistent with, was in compliance with the regulations first and foremost, as this Court has recognized. And it is, did not violate the Constitution. There's no preemption of Fourth Amendment issue here. And furthermore, it was consistent with federal law and state law as well. And furthermore, the petitioner alleges various regulatory and statutory pre-hearing violations. But he must show prejudice and he hasn't done so. It sounds to me like the petitioner is claiming that there was a violation of state law by the state authorities in arresting him. And that violation should be attributed to ICE too. What's wrong with that view? Well, first and foremost, as this Court has already recognized, state officers have inherent or implied authority to make arrests for immigration violations. And second, under Utah law, officers are allowed to make arrests for violations of public offenses, which is broader than just state crimes, includes federal violations, including immigration law. What about, they say the federal district court in Utah had an order out that was violated by the state. That is incorrect, Your Honor. There is no violation of the district court decision there. In Utah Coalition of LaRosa versus Herbert, decided by the District of Utah in 2014, that issue was HB 497. And I see that my time has expired, but if I may briefly respond to Judge Murphy's question. Thank you. So in that case, most of the provisions were actually upheld as constitutional. Only three of those provisions were not. One of which were the law authorizing arrest where there is reasonable cause to believe that the person is subject to removal, that the person is subject to a civil detainer, or has been charged or convicted of an aggravated felony. Now, the problem with that provision was that it allowed the state, based on just reasonable cause, to exercise its decision unilaterally in determining whether and when to enforce immigration law. That's not permitted under Arizona. But in Utah Coalition, another provision was upheld as constitutional, and that provision restricted local governments from prohibiting local officers from assisting the federal government in the enforcement of immigration law. And that provision was upheld as constitutional, as was 77-7-2 subsection 1, which this Court in Santana-Garcia has already construed as permitting state officers to make arrests for immigration violations. So absent preemption issue, there's state authority here to make the arrests. If there are no further questions, the government submits. Thank you. Anything further, Judge Kelly? No, thank you. Anything further? Thank you. We could add about 45 seconds onto Mr. Robertson's time, please. Thank you. I'll begin with the injunction. The U.S. District Court of Utah struck down Section 11 of a Utah law, among other sections. And Section 11 specifically grants Utah officials arrest authority when, quote, a civil detainer has been issued for the individual. That was a specific section of the law that was struck down by the injunction. This is exactly the case that happened to Mr. Aguayo. Moving on to prejudice, the BIA's analysis of prejudice is incorrect. If you, as CIS, denied the adjustment, Mr. Aguayo would then have had the opportunity to go to immigration court after that, out of custody. So there was actual prejudice here. Because of the unlawful arrest, he lost his job and he was in custody for over a year. That's prejudicial. He had no opportunity to rehabilitate from his misdemeanors. There was no break between the state custody and the federal custody, as there should have been. He wasn't able to communicate. His communication with family was impeded by his custody. And family, of course, are the principal witnesses and people you bring up when you're trying to adjust status. In regards to whether the illegal arrest on the 29th should be imputed to ICE, ICE told the Utah officials to hold on to Mr. Aguayo despite this injunction. And they benefited from holding on to him. I take it that the prejudice you're referencing, you first referenced, is prejudice that dates from his original arrest by the state of Utah. And that because he was held for that long, he was not able to develop his own evidence to present to USCIS for the hearing that he had about how he had rehabilitated himself.  Yes, Your Honor. And so that necessitates that prejudice, you must be able to attach the prejudice from the time of his arrest by the state until the 29th of July in order to establish prejudice for this purpose. Well, that seizure was legal by the state officers. But once we get to the 29th, the additional seizure, that's illegal. Okay, then that means that we eliminate from our prejudice analysis all this period of time from when he had been detained by the state of Utah for state violations and for sentencing up until the 29th. So the only prejudice is prejudice that begins upon his release, the completion of his sentence. Isn't that important, what you're saying? The prejudice comes from the fact that he was never released and kept in custody for over a year when he should have been able to adjudicate his adjustment before USCIS. May I please conclude with? Just briefly. Briefly, okay. So this court should grant termination rather than remand because of the statutory and constitutional questions that are implicated in this case that the BIA expressly refused to, said it couldn't consider. That's why it's appropriate for this court to grant termination. The government argues it doesn't matter that ICE violated the law. It does your honors. Thank you. Thank you, counsel. Thank you for your helpful arguments. The case is submitted and counsel are excused. We'll call the next case, 21-4058, Indiana Public Retirement v. Pluralsight. Ms. Gilden. Thank you, Judge. May it please the court. My name is Carol Gilden. I'm from Cone Milstein Cellars in Tulsa.